IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATHANIEL JOHNSON, Individually and as   : | CIVIL ACTION |
| Heir to the Estate of Josie Johnson, Deceased  : | |
| : | |
| v.        : | |
| : | |
| METLIFE BANK, N.A., Successor to BNY    : | |
| Mortgage Company, LLC, et al.    : | NO. 11-800 |

<u>MEMORANDUM</u>

**Padova, J.**                                                                                                                **August 7, 2012**

      This action arises out of a 2007 reverse mortgage transaction pursuant to which Plaintiff Nathaniel Johnson conveyed his interest in his family home to his mother, Josie Johnson, and then Josie Johnson entered into a reverse mortgage with BNY Mortgage Company, LLC ("BNY"). The Third Amended Complaint asserts claims of unfair and deceptive practices under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. Ann. § 201-1 <u>et seq.</u>, against Defendant MetLife Bank, N.A. ("MetLife"), the successor to BNY, as well as against two assignees of the mortgage: Reverse Mortgage Solutions, Inc. ("RMS"), and Bank of America Corporation ("BoA") (collectively, the "Assignees"). MetLife and the Assignees have filed separate Motions for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, we grant MetLife's Motion in part and deny it in part, and grant the Assignees' Motion in full.

**I.     BACKGROUND**

      Unless otherwise noted, the following facts are undisputed. Plaintiff Nathaniel Johnson purchased his residence at 6528 Theodore Street, Philadelphia, Pennsylvania, ("the Property") in 1995. (Johnson Dep. at 26, 28.) In 1996, he deeded the Property to himself and his mother, Josie Johnson ("Mother"), who also resided there. (<u>Id.</u> at 33-34.) In 2007, Plaintiff and Mother desired

a loan in order to finance repairs to the home. (Id. at 42-43.) Plaintiff attempted unsuccessfully to obtain such a loan from several banks. (Id. at 41-42.)

In early 2007, BNY began discussing the possibility of a reverse mortgage with Plaintiff and Mother. (See MetLife Ex. B.) Julie Lobacz, a BNY reverse mortgage specialist, met with Plaintiff and Mother on at least two occasions to discuss the transaction. (Lobacz Dep. at 42.) According to Plaintiff, Lobacz told him that he and Mother would be co-borrowers on a "hectom" loan, which would have an interest rate of approximately 7%, and that Plaintiff could make monthly payments on the loan. (Johnson Dep. at 67.) Plaintiff had little experience in mortgages and relied on Lobacz's representations. (Id. at 66-67.) He testified that he told Lobacz that he would not go through with any deal if he had to sell the Property or if the loan did not provide for monthly payments. (Id. at 66, 89.)

On August 14, 2007, Lobacz met with Mother and Plaintiff at their home. All three signed an Ownership Interest Certification. (Assignees' Ex. F.) The Ownership Interest Certification stated that owners of the property who themselves were not eligible for a reverse mortgage, such as Plaintiff,[1] would be required to relinquish their interest in the property in order for the other owner to obtain a reverse mortgage. (Id.) The Ownership Interest Certification further stated that the reverse mortgage would become due and payable on the death of the borrower, and that the borrower's estate would be responsible for paying it off. (Id.) Plaintiff signed the Ownership Interest Certification as a "Non-Borrowing Resident," and Mother signed it as a "Borrower." (Id.) On this day, Plaintiff, Mother, and Lobacz also signed a "Notice to Non-Borrowing Spouse or

---

[1] Plaintiff was not eligible to be a borrower on the reverse mortgage because he was under the age of 62.

Resident." (Assignees' Ex. G.) This document stated that the reverse mortgage loan could not be assumed by the non-borrowing resident upon the borrower's death, and that the loan would become due and payable upon the borrower's death. (Id.) Again, Plaintiff signed this document as a "Non-borrowing spouse or resident" and Mother signed it as a "Borrower." (Id.) Following this meeting, Lobacz sent to Plaintiff a sample of the repayment letter that would normally be sent out after the borrower's death. (Assignees' Ex. I.) This letter stated that the borrower's estate would have 180 days from the borrower's death to pay off the mortgage, and that if it failed to do so, BNY could institute foreclosure proceedings on the property. (Id.) Lobacz testified that it was out of the ordinary for her to provide a sample of the letter as part of the reverse mortgage negotiations, but that she did so in this case because Plaintiff wanted more information about what would happen when Mother died. (Lobacz Dep. at 59.)

On October 27, 2007, Lobacz met again with Plaintiff and Mother to finalize the reverse mortgage. Plaintiff and Mother signed a deed on that date transferring the property into Mother's name alone. (Assignees' Ex. J.) Plaintiff testified that he did not understand that he was transferring his interest in the Property when he signed this document and that he had no intention to do so. (Johnson Dep. at 99-100.) Also on that day, Mother entered into the reverse mortgage with BNY. (Assignees' Ex. L.) Plaintiff's name does not appear anywhere on this document and he did not sign this document. (Id.) Only Mother is listed as a borrower. (Id.) The reverse mortgage provided for a total loan in the amount of $100,500, some of which went to pay off the purchase money mortgage on the Property and the outstanding taxes and utility bills. (Assignees' Ex. M.) Plaintiff and Mother used other proceeds from the loan to make home repairs. (Johnson Dep. at 128-31.)

Mother died on December 11, 2009, and the reverse mortgage became due and payable.

(MetLife's Statement of Material Facts ¶ 8; Plaintiff's Statement of Material Facts ¶¶ 19-20.) Defendant Reverse Mortgage Services, the servicer of the mortgage, instituted foreclosure proceedings on the residence in April 2011. (MetLife's Statement of Material Facts ¶ 9.) Defendant BoA is the current owner of the mortgage. (Id.)

In June 2011, Plaintiff sent to World Alliance Financial Corp., the then-holder of the reverse mortgage, a request to rescind the mortgage, pursuant to the UTPCPL's rescission provision. (Assignees' Ex. O.) The request was denied. (Id.)

Plaintiff's Third Amended Complaint brings three claims. Count One is a claim under the UTPCPL's catch-all provision against MetLife only, as successor to BNY, in which Plaintiff alleges that Lobacz misled Plaintiff as to the terms of the reverse mortgage, and that Plaintiff, had he known the actual terms, would not have deeded his share of the residence to Mother. Count Two is a claim against all three Defendants pursuant to the UTPCPL's rescission provision, in which Plaintiff alleges that he had a right to rescind the reverse mortgage and that Defendants violated this right by refusing his request to rescind the deal. Count Three is a claim to quiet title against all three Defendants, in which Plaintiff requests that the Court enter a judgment declaring him the sole owner of the residence, unencumbered by the reverse mortgage.[2]

MetLife and the Assignees have separately filed Motions for Summary Judgment, raising substantially similar arguments. They argue that all three of Plaintiff's claims fail and request that we enter judgment on their behalf.

---

[2]Although the Third Amended Complaint additionally lists Plaintiff as "Heir to the Estate of Josie Johnson," Plaintiff has asserted no claims on behalf of his mother Josie, and did not respond to MetLife's argument that he has no standing to do so. Accordingly, we conclude that the Third Amended Complaint brings claims solely on Plaintiff's own behalf.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the nonmoving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court" that "there is an absence of evidence to support the nonmoving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response "must support the assertion [that a fact is genuinely disputed] by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials [that the moving party has cited] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). Summary judgment is appropriate if the nonmoving party fails to respond with a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

**III.     DISCUSSION**

        A.      <u>Count I: UTPCPL Catch-all Provision Claim Against MetLife</u>

MetLife raises three arguments as to why Plaintiff's UTPCPL catch-all provision claim fails:[3] 1) he lacks standing to bring any claim under the UTPCPL's private cause of action because he was not a "purchaser," 2) there is no evidence that Lobacz deceived or misled Plaintiff, and 3) Plaintiff cannot raise a genuine issue of material fact solely through his self-serving deposition testimony. We reject each argument.

              1.      <u>Standing</u>

Metlife first argues that Plaintiff has no standing to bring a claim under the UTPCPL because only a "purchaser" may bring claims under this statute and it is clear that Plaintiff was not a party to any transaction with BNY or any Defendant. Plaintiff argues that he was heavily involved in the transaction and pre-closure discussions and led to believe he was a borrower on the loan, and thus has standing to challenge the tactics used by BNY to procure the reverse mortgage.

The UTPCPL provides a cause of action for "[a]ny person who purchases or leases goods or services . . . and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful" under the UTPCPL. 73 Pa. Stat. Ann. § 201-9.2. A plaintiff need not be in direct privity with a defendant to bring an action under the UTPCPL for the defendant's wrongful conduct. See <u>Katz v. Aetna Cas. & Sur. Co.</u>, 972 F.2d 53, 56 (3d Cir. 1992) (citing <u>Valley Forge Towers S. Condominium v. Ron-Ike Foam Insulators, Inc.</u>, 574 A.2d 641, 645 (Pa. Super. Ct. 1990)). Rather, standing to bring a claim

---

      [3]The catch-all provision prohibits engaging in any "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding" in the conduct of trade or commerce. 73 Pa. Stat. Ann. § 201-2(4)(xxi); <u>Toy v. Metro. Life Ins. Co.</u>, 928 A.2d 186, 190 n.4 (Pa. 2007).

also extends to "those specifically intended to rely upon the fraudulent conduct[] and those whose reasonable reliance was specially foreseeable." Valley Forge Towers, 574 A.2d at 647. However, standing does not extend to "a plaintiff lacking any commercial dealings with the defendant," Katz, 972 F.2d at 57, or to a party who made no purchase. Gemini Physical Therapy and Rehab., Inc. v. State Farm Mut. Auto. Ins. Co., 40 F.3d 63, 65 (3d Cir. 1994) (citation omitted).

      MetLife argues that, because Plaintiff was not a party to the reverse mortgage, he cannot be a purchaser under the UTPCPL and thus has no standing to bring this claim. But, as direct privity is not required for standing under the UTPCPL, this argument falls short. Rather, Plaintiff can satisfy the standing requirements of the UTPCPL by putting forth evidence that he had commercial dealings with BNY, that BNY misled him during those commercial dealings knowing that he might rely on the misrepresentations, and that he ultimately made a purchase as a result of the misrepresentations. Plaintiff's testimony, if credited by the fact finder, can satisfy these standing requirements. Plaintiff testified that he engaged in discussions with Lobacz, which led him to believe that he would be a co-borrower on the reverse mortgage. A reasonable jury could conclude that BNY intended Plaintiff to rely on the representations made by Lobacz, as BNY needed Plaintiff to deed his share of the Property to Mother in order to finalize the reverse mortgage. Finally, as we reasoned in our September 21, 2011 Memorandum, these facts can support a conclusion that Plaintiff made a purchase of mortgage services insofar as he gave Mother his interest in the Property in exchange for receiving benefits from the reverse mortgage that BNY sold to Mother. Johnson v. MetLife Bank, N.A., Civ. A. No. 11-800, 2011 WL 4389582, at *3-6 (E.D. Pa. Sept. 21, 2011) (citing, among others, In re Fowler, 425 B.R. 157, 188 (Bankr. E.D. Pa. 2010) (concluding that homeowners were purchasers of mortgage services as opposed to sellers of their interest in the

property)). We therefore conclude that Plaintiff has standing to bring a private cause of action under the UTPCPL.

        2.        <u>Deceptive Conduct</u>

MetLife next argues that there is no evidence of any deceptive conduct by Lobacz or any other BNY employee and therefore Plaintiff's UTPCPL claim under the catch-all provision must fail. Specifically, MetLife argues that Lobacz testified that she fully and accurately explained the details of the reverse mortgage to Plaintiff, and that Plaintiff did not testify as to any specific misrepresentations made by Lobacz. Plaintiff argues that exactly what was said between Lobacz and Plaintiff is disputed, and based on Plaintiff's version of the discussions, there is sufficient evidence that Lobacz misled him.

To succeed on a claim under the UTPCPL's catch-all provision, "a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." <u>Yocca v. Pittsburgh Steelers Sports, Inc.</u>, 854 A.2d 425, 438 (Pa. 2004) (citations omitted); <u>see also</u> <u>Hunt v. U.S. Tobacco Co.</u>, 538 F.3d 217, 224 (3d Cir. 2008). Deceptive conduct under the catch-all provision "'is defined as intentional misleading by falsehood spoken or acted. An act or practice is deceptive or unfair if it has the capacity or tendency to deceive.'" <u>Chiles v. Ameriquest Mortg. Co.</u>, 551 F. Supp. 2d 393, 399 (E.D. Pa. 2008) (quoting <u>Christopher v. First Mut. Corp.</u>, Civ. A. No. 05-1149, 2006 WL 166566, at *4 (E.D. Pa. Jan. 20, 2006)). Whether a plaintiff's reliance was justifiable is "'typically a question of fact for the fact-finder to decide, and requires a consideration of the parties, their relationship, and the circumstances surrounding their transaction.'" <u>Levine v. First Am. Title Ins. Co.</u>, 682 F. Supp. 2d 442, 467 (E.D. Pa. 2010) (quoting <u>Toy v. Metro. Life Ins. Co.</u>, 928 A.2d 186, 208 (Pa. Super. Ct. 2007)).

In the instant case, the details of the conversations between Lobacz and Plaintiff as to the terms of the reverse mortgage are disputed. MetLife argues that Lobacz correctly described the reverse mortgage to Plaintiff, meaning that she told Plaintiff that the reverse mortgage would become payable upon Mother's death and that Mother's estate would be required to satisfy the reverse mortgage. (See Lobacz Dep. at 42, 59-60, 74; MefLife Ex. H, Letter to N. Johnson.) MetLife further argues that the documents Plaintiff signed, the two Notices and the deed transferring his property to Mother, all clearly explained that Plaintiff would be giving up his share of the residence and that he would not be a borrower on the reverse mortgage. (See Assignees' Exs. F, G, J.)

In contrast, Plaintiff testified that, based on his conversations with Lobacz, he believed he was entering into a "hectom" loan, which he would be able to pay off in monthly payments with a seven percent interest rate. (See Johnson Dep. at 56-57, 64-65.) Plaintiff further testified that, because he was not experienced in real estate matters, he relied on Lobacz's verbal representations rather than the written documents that he signed. (Id. at 66-67.) Moreover, Plaintiff testified that he specifically told Lobacz that he would not enter into any agreement without a monthly repayment plan and that he had no interest in selling the Property. (Id. at 66, 89.)

Certainly this testimony creates a dispute of fact as to what was said between Plaintiff and Lobacz, and how Plaintiff could get the impression that he himself was entering into a "hectom" loan with a seven percent interest rate which he would pay off in monthly payments. The dispute is material because, contrary to MetLife's implication, a reasonable jury could infer from Plaintiff's testimony that Lobacz misled or deceived him as to the details of the reverse mortgage transaction. Accordingly, we conclude that there is a genuine issue of material fact that precludes the entry of summary judgment on Plaintiff's UTPCPL catch-all provision claim against MetLife.

### 3. Plaintiff's Deposition Testimony

Finally, MetLife argues that Plaintiff cannot defeat its Motion for Summary Judgment by relying solely on his self-serving deposition testimony to create genuine issues of material fact. MetLife is correct that "[a]s a general proposition, 'conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment.'" Gonzalez v. Sec'y of the Dep't of Homeland Sec., 678 F.3d 254, 263 (3d Cir. 2012) (quoting Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 161 (3d Cir. 2009)). This rule has been extended to self-serving deposition testimony. Irving v. Chester Water Auth., 439 F. App'x 125, 127 (3d Cir. 2011). However, the issue is not whether Plaintiff has relied solely on his own testimony to challenge the Motions, but whether Plaintiff's testimony, when juxtaposed with the other evidence, is sufficient for a rational factfinder to credit Plaintiff's testimony, despite its self-serving nature. See Gonzalez, 678 F.3d at 263 ("[T]his is a case where the court, based on all of the evidence, can say with confidence that a rational trier of fact could not credit [plaintiff's testimony]." (quotation omitted)); see also Irving, 439 F. App'x at 127 ("In light of both his earlier testimony and other record evidence, [plaintiff's] self-serving deposition testimony is insufficient to raise a genuine issue of material fact.").

We conclude that a rational trier of fact could credit Plaintiff's self-serving testimony, even in light of Defendants' evidence. First, we note that Defendants' evidence is simply not overwhelming. Defendants rely on Lobacz's deposition testimony (which is self-serving to the extent that Lobacz was an employee of BNY), the documents signed by Plaintiff, the two Notices and the deed, and the reverse mortgage itself. While this evidence may appear stronger than Plaintiff's, it is not so overwhelming that no rational jury could believe Plaintiff. Second, Plaintiff's deposition testimony is not a conclusory, self-prepared affidavit, but rather testimony elicited from

questions by opposing counsel which challenged Plaintiff's recollection of events. Accordingly, we conclude that Plaintiff's deposition testimony is sufficient for a rational jury to credit his account of the discussions with Lobacz, and therefore is sufficient to create a genuine issue of material fact for trial and defeat MetLife's Motion for Summary Judgment. Thus, we deny MetLife's Motion insofar as it seeks judgment in MetLife's favor on Count I.[4]

      B.      Count II: UTPCPL Rescission Claim Against All Defendants

Plaintiff's UTPCPL rescission claim arises under § 201-7 of the UTPCPL, which provides buyers, under certain circumstances, the right to rescind a sale and also requires the seller to advise the buyer of the goods or services that he has the right to rescind the transaction within three business days. See 73 Pa. Stat. Ann. § 201-7(a). A failure to comply with the rescission provision is actionable under the UTPCPL's private cause of action. Culbreath v. Lawrence J. Miller, Inc., 477 A.2d 491, 500-01 (Pa. Super. Ct. 1984).

It is undisputed that Plaintiff was never given notice of the right to rescind and that, in 2011, the then-mortgage holder rejected Plaintiff's request to rescind the reverse mortgage.[5] Defendants argue, however, that Plaintiff has no right to rescind the reverse mortgage under the rescission provision because the statute only requires a seller to notify the "buyer" of his right to rescind, and

---

[4]MetLife argues in a footnote that it cannot be held liable for BNY's deceptive conduct as its successor in interest. "'[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived.'" John Wyeth & Brother, Ltd. v. CIGNA Int'l Corp., 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) (citations omitted). In this case, the complexities of successor liability require briefing and factual development for us to make an informed ruling on this argument. See generally Girard v. Allis Chalmers Corp., 787 F. Supp. 482, 486-87 (W.D. Pa. 1992) (describing exceptions to the general principle of successor non-liability).

[5]Notably, Mother was given notice of her right to rescind the reverse mortgage, and she chose not to exercise that right. (Plaintiff's Ex. B.) Plaintiff has made no argument that Defendants violated Mother's rights under the UTPCPL's rescission provision.

Plaintiff does not qualify as a "buyer" of the mortgage because he was not actually a party to the mortgage. We agree with Defendants.[6]

The basic aspects of the rescission provision support a conclusion that a plaintiff must be a direct party to the contract at issue in order to be entitled to rescind it under the UTPCPL's rescission provision. To effect a rescission, a buyer must return or hold available for return the goods sold to him. 73 Pa. Cons. Stat. Ann. § 201-7(a). An individual who was not a party to the contract would have no legal right to return the goods and, thus, could not fulfill his obligations under the rescission provision.[7]

We find further support for our conclusion in the law regarding the equitable remedy of rescission, available under certain circumstances in a breach of contract suit. While non-parties to a contract can, at times, sue for breach of that contract, a non-party is not entitled to the remedy of rescission. See Schuylkill Skyport Inn, Inc. v. Rich, Civ. A. No. 95-3128, 1996 WL 502280, at *29 (E.D. Pa. Aug. 21, 1996) (citing Castle v. Cohen, 676 F. Supp. 620, 627 (E.D. Pa. 1987)). Moreover, a basic prerequisite for rescission is the ability to return the parties to the pre-contract status quo.

---

[6]Plaintiff argues that we already rejected Defendants' argument that Plaintiff was not a buyer of the reverse mortgage in our September 21, 2011 Memorandum. In that Memorandum, however, we simply rejected Defendants' argument that the facts as alleged made clear that Plaintiff was a *seller* of his interest in the Property, as opposed to a buyer of mortgage services. See Johnson, 2011 WL 4389582, at *3-6. We held at that time that Plaintiff should be permitted to develop a factual record to establish that he was, in fact, a buyer of goods or services to which rescission rights attached. We now consider, for the first time, whether the factual record supports a claim that Plaintiff was a buyer of the reverse mortgage such that he had rights under the UTPCPL's rescission provision.

[7]We emphasize that our decision is not at all based on the fact that the Assignees were not parties to the reverse mortgage. To the contrary, "[t]here is authority at common law . . . for granting a plaintiff rescission against a defendant who was not a party to the contract in question . . . ." Pinter v. Dahl, 486 U.S. 622, 647 n.23 (1988) (citations omitted); see also Gordon v. Burr, 506 F.2d 1080, 1085 (2d Cir. 1974).

Cabot v. Jamie Record Co., Civ. A. No. 96-4672, 1999 WL 236737, at *8 (E.D. Pa. Apr. 19, 1999) (citing Fichera v. Gording, 227 A.2d 642, 647 (Pa. 1967)).  As mentioned above, a non-party has no ability to return any goods purchased or disclaim any right to services, and thus could not return the parties to their pre-contract positions.

      Plaintiff contends that if he has standing under the UTPCPL's private cause of action, then he necessarily has rights under the rescission provision.  As discussed, the private cause of action must be construed broadly to fulfill the purpose of the UTPCPL and thus direct privity is not required for standing.  See Valley Forge Towers, 574 A.2d at 647 (describing how, if direct privity were required for a cause of action, a seller could use third parties or indirect dealings to avoid liability under the UTPCPL's private cause of action).  The rescission provision, on the other hand, need not be construed so broadly.  The rescission provision is "primarily directed to providing protection to a consumer who falls prey to a seller who contacts the consumer at his or her home and consummates a sales transaction before the customer has adequate time to reflect on the wisdom of the purchase."  Burke v. Yingling, 666 A.2d 288, 291 (Pa. Super. Ct. 1995).  A requirement that a plaintiff be a party to the transaction does not frustrate this purpose, as someone will always be a party to the sale, and thus someone will have the right to rescind.  In this case, it was Mother, who was given notice of the right to rescind and chose not to exercise that right.  An unscrupulous seller could not avoid the rescission provision by structuring the transaction in a certain way because there will always be direct privity with at least one person involved in the sale.  Moreover, as in our case, such an unscrupulous seller may still be liable for any deceptive conduct, and thus cannot avoid liability even if the more drastic remedy of rescission is not available to a plaintiff.

      Finally, from a more general perspective, it makes sense to limit the right to rescind to parties

to the contract, as broadening the right would become unwieldy and impractical. Sellers and buyers alike need certainty regarding the right to rescind, and the instant case provides an illustration of why a clear rule regarding who is entitled to rescind is needed. Sellers such as BNY need to know from the outset what parties should be provided with notice of the right to rescind. Without a clear rule, BNY has no way to know with certainty whether Plaintiff should have been given notice in this case. And without such certainty, there will be situations, like the instant case, where a third party may seek rescission years after the transaction. The Assignees too are entitled to some certainly. They need to know when they undertake obligations on a loan whether there is a possibility that the transaction may be rescinded. Finally, the buyer herself is entitled to certainty. Under Plaintiff's view, he presumably could have rescinded the transaction over Mother's objection, as she chose not to exercise her right to rescind the deal.

We conclude that Plaintiff, because he was not a party to the reverse mortgage, was not entitled to rights under the UTPCPL's rescission provision with respect to that mortgage. Thus, Defendants did not violate the UTPCPL's rescission provision by failing to provide him notice of the right to rescind or by rejecting his request to rescind the reverse mortgage. Accordingly, we grant the Motions for Summary Judgment as to Count II.[8]

    C.    <u>Count III: Quiet Title Claim Against All Defendants</u>

Defendants argue that Plaintiff's claim to quiet title is derivative of his rescission claim, and thus if we enter judgment against Plaintiff on his rescission claim we should also enter judgment

---

[8] Defendants also argued, with respect to Count II only, that any oral statements by Lobacz cannot be considered under the parol evidence rule and that Plaintiff could not, as a matter of law, justifiably rely on oral representations that were contradicted by future writings. Based on our conclusion above, we need not address these issues.

against Plaintiff on his quiet title claim. Plaintiff did not respond to this argument and, in fact, did not discuss the quiet title claim at all in his response to Defendants' Motions. We agree with Defendants that Plaintiff's quiet title claim is dependant on his claim for rescission. Thus, we grant Defendants' Motions as to Count III.

IV.   **CONCLUSION**

For the foregoing reasons, we grant MetLife's Motion for Summary Judgment in part and deny it in part. The Motion is denied as to Count I and granted as to Counts II and III. The Assignees' Motion for Summary Judgment is granted in full. Judgment is entered against Plaintiff and in favor of Defendants as to Counts II and III. An appropriate Order follows.

BY THE COURT:


/s/ John R. Padova
John R. Padova, J.